UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SUZY ELKINS, on behalf of Herself and other similarly situated, ) ) ) Plaintiff, ) ) v. ) ) MEDCO HEALTH SOLUTIONS, INC., ) ) Defendant. ) | Case No. 4:12CV2141 TIA |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (ECF No. 64), and Plaintiff's Fed.R.Civ.P. 56(d) Motion (ECF No. 82). The parties have filed responsive pleadings to the pending motions. All matters are pending before the undersigned United States Magistrate Judge, with the consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff Suzy Elkins filed the instant action alleging the automated and prerecorded calls she received in St. Louis concerning health benefits she receives from Defendant Medco Health Solutions, Inc. ("Medco"), through her enrollment in her employer's health plan, Coventry Health of Missouri, violated the Telephone Consumer Protection Act ("TCPA") by inappropriately calling her cell phone in order to sell prescription drugs. Medco contends that Medco contacted Plaintiff at the St. Louis number she provided, concerning benefits she had already purchased through her health plan with Coventry of Missouri. Plaintiff contends that the robocalls are prohibited by 47 U.S.C. § 227(b) (Count I) and violated the Do Not Call provision of 47 U.S.C. § 227(c) (Count II).

Medco has filed a motion for summary judgment claiming that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Medco contends it is entitled to

judgment on all of Plaintiff's TCPA claims inasmuch as she expressly consented to be called at the number she provided when she gave the telephone number as her contact number related to her healthcare benefits. With respect to her "Do Not Call" claim, Medco contends it is entitled to judgment as a matter of law inasmuch as the healthcare-related calls at issue did not constitute telemarketing or telephone solicitations and were also made pursuant to Medco's established business relationship with Plaintiff. In addition to filing opposition thereto, Plaintiff has filed a motion for additional time to conduct discovery. Because the undisputed facts demonstrate that Medco Health Solutions, Inc. is entitled to judgment as a matter of law, the undersigned will grant the motion for summary judgment.

In its Answer, Defendant asserted as affirmative defenses that Plaintiff is barred from recovering any amounts from Medco because she consented to the conduct of Medco now alleged to be wrongful and/or her prior express consent; and her claims are barred because Medco was complying with each of its contractual obligations. (Answer, ECF No. 20 at ¶¶ 13, 23, 25, 29).

Pursuant to Rule 56(c), Federal Rules of Civil Procedure, a court may grant summary judgment if the information before the court shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden of proof is on the moving party to set forth the basis of the motion, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and the court must view all facts and inferences in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial. Id. "[T]he nonmovant must respond by submitting evidentiary materials that 'set out

specific facts showing a genuine issue for trial.'" Celotex, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(e)(2)). The non-moving party may not rest upon her pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion. Id., at 324. The nonmovant must "explain the legal significance of her factual allegations beyond the mere conclusory statements importing the appropriate terms of art." Quinn v. St. Louis Cnty., 653 F.3d 745, 752 (8th Cir. 2011).

In passing on a motion for summary judgment, the Court must review the facts in a light most favorable to the party opposing the motion, and give that party the benefit of any inference that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). At the summary judgment stage, the undersigned will not weigh the evidence and decide the truth of the matter, but rather the undersigned need only determine if there is a genuine issue of material fact for trial. Anderson, 477 U.S. at 249. Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." Hindman v. Transkrit Corp., 145 F.3d 986, 990 (8th Cir. 1998) (citations omitted); Bassett v. City of Minneapolis, 211 F.3d 1097, 1099 (8th Cir. 2000). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 at 248. Further, if the nonmoving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, ... there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23.

Nonetheless, it is clear to survive summary judgment, a plaintiff must support his/her allegations with sufficient probative evidence to permit a finding in the plaintiff's favor based upon more than mere speculation, conjecture, or fantasy. Putnam v. Unity Health Sys., Inc. 348 F.3d 732, 733-34 (8th Cir. 2003). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 526-27 (8th Cir. 2007). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." Kountze ex rel. v. Hitchcock Foundation v. Gaines, 2008 WL 2609197, at * 3 (8th Cir. 2008). "'Only disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Bass v. SBC Commc'ns, Inc., 418 F.3d 870, 872-73 (8th Cir. 2005) (quoting Anderson, 477 U.S. at 248). Thus, Plaintiff, even though the non-moving party for summary-judgment purposes, "must still 'present[] evidence sufficiently supporting the disputed material facts [such] that a reasonable jury could return a verdict in [its] favor.'" Pope v. ESA Servs,, Inc., 406 F.3d 1001-1003-04 (8th Cir. 2005) (quoting Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48.

**The Undisputed Evidence before the Court on the Motion**

Viewing all facts and drawing all reasonable inferences in the light most favorable to the nonmoving party, A. Brod, Inc. v. SK & I Co., L.L.C., 998 F. Supp. 314, 320 (S.D.N.Y. 1998) the Court sets forth the following facts as established by the records submitted by the parties:

**1. Background**

Plaintiff Suzy Elkins has been enrolled to receive prescription benefit management services through a group plan offered by her employer, and Plaintiff re-enrolled on December 8, 2011 after her employer changed plans to receive prescription benefit management services from Medco through Coventry Health Care of Missouri ("Coventry"). (Day Decl. at ¶ 3; Miller Decl. at ¶ 4).

Plaintiff executed the "Enrollment and Change Form" when she enrolled in her health plan, and she identified "314-922-0901" as her area code and home number on the form and certified that the information she provided was true and accurate. (Miller Decl. at ¶ 5, Exh. A). In the enrollment form Plaintiff certified that she carefully read and agreed to abide by the provisions of the Group Health Agreement, Certificate of Coverage and Benefit Riders under which she enrolled. (Id.). The Certificate of Coverage ("Certificate") states that Coventry may use and share the personal information provided for treatment, payment, and health care operations and may use or share the personal information with "other businesses who work for the Plan ... [t]o tell You about treatment options or health related services." (Miller Decl., Exh. B at 70). The Certificate also provides that the members have certain rights including the right to ask for restrictions, and apprised the members to read the Coventry Notice of Privacy Practices for more information. (Id.). Plaintiff never provided notice as required by the Certificate of Coverage and Notice of Privacy Practices that she should not be contacted at the number she provided with respect to her health benefits, including the Maintenance Drug Program. (Day. Decl., Exh. 1).

Plaintiff was issued a Medco/Coventry health and prescription benefit card with Medco identified on the face of the card. (Miller Decl. at ¶10, Exh. F). Plaintiff utilized Medco's prescription benefit management services to fill twelve prescriptions from January 1 to June 1, 2012

at one of Medco's retail-network pharmacies. (Day Decl. at ¶¶ 4-5). In January, February, March, April, May, and June 2012, Plaintiff submitted prescription claims to Medco for thirty-day supplies of maintenance medications. (Id. at ¶ 5). Medco records show that Plaintiff submitted prescription claims for thirty-day supplies of maintenance medications, and under the terms of the plan, she was charged a full co-pay each time she refilled a thirty-day supply. (Id. at ¶ 5).

Plaintiff certified that she agreed to abide by the Prescription Drug Rider for her health plan and the Maintenance Drug Program as set forth therein. (Miller Decl. at ¶ 8, Exh. D). The Maintenance Drug Program provides in relevant part: "The Coverage for a Covered Drug or Prescription Drug dispensed for the purpose of maintenance from either GHP's designated mail order provided or through a maintenance pharmacy contracted to provide a ninety (90) day supply subject to the quantity limits in Section 1(c), Monthly Supply, at the preferred rate upon payment of up to 3 Copayments shall be the amount sufficient to provide for no more than a three (3) month supply." (Miller Decl., Exh. D at 4).

In the Notice of Privacy Practices ("Notice"), Coventry delineated that information collected would include "your name, address, phone number, Social Security number, date of birth, marital status, employment information, or medical history." (Miller Decl., Exh. C at 1). The Notice specified that Coventry may share the personal information as part of our operations in servicing your benefits including general administrative activities such as pharmacy benefits administration." Id. at 2). "For example, we may use or share your personal information in order to evaluate the quality of health care delivered, to remind you about preventative care, or to inform you about a disease management program" and lists specific examples of business associates that may use the information including "those companies providing your pharmacy or behavioral health benefits." (Id. at 2-3).

Under her health insurance plan, Plaintiff is not required to purchase prescriptions from Medco Pharmacy. (Miller Decl., Exh. B at 14). "You may choose from among qualified Providers to service Your health care needs." (Id.).

**2. The June 28 and July 5, 2012 Telephone Calls**

After Medco identified Plaintiff as not utilizing the cost-savings maintenance benefit for which she was eligible, Medco scheduled her to receive a call at the contact number she provided as her home phone number on her health plan enrollment form. (Day Decl. at ¶ 7). Under the terms of the maintenance prescription benefit, certain of Plaintiff's maintenance prescriptions could be distributed in a ninety-day quantity at significant savings. (Day Decl. at ¶ 6).

Plaintiff received telephone calls from Medco on June 28 and July 5, 2012. (Day Decl. at ¶¶ 8-10). A Medco representative attempted to call Plaintiff, but was unable to reach her on June 28, 2012. (Id.). The purpose of the call was to apprise her about the maintenance benefit available under her plan, the benefit of obtaining a ninety-day supply of her maintenance prescription. (Id. at ¶ 7; Exh. D at 5). Another purpose of the call was to encourage Plaintiff to call Medco pharmacists to discuss other "medication and health concerns" with pharmacists from the Medco Pharmacy inasmuch as this is one of the pharmacy benefit management services available under her specific health plan. (Id.). Listed in the call scripts as speaking points were the following:

> Getting started with Medco Pharmacy is easy. We can even contact your doctor for you.
>
> Can save you money.
>
> Convenient to use.
>
> Safe and effective care.

(Decl. Elkins, Exh. D at 4).

Plaintiff answered the July 5, 2012 call at the contact number she provided on her health plan enrollment form and the following conversation occurred between Michael Ortega, a Medco prescription benefits specialist, and Plaintiff:

Plaintiff: Hello

Michael Ortega: Hello

Plaintiff: Hello

Michael Ortega: Hi, my name is Michael Ortega. I'm Prescription Benefit Specialist with MEDCO. We're the company that manages the Coventry of Missouri. This call may be monitored or recorded. Is Susie there?

Plaintiff: What do you want?

Michael Ortega: What we do is we manage the medications, the claims come to us and we approve them and what we are doing is we're calling to list some of the benefits of the plan and savings on the three month supply.

Plaintiff: Oh, okay.

Michael Ortega: Have you heard of MEDCO?

Plaintiff: Yeah. Yeah. Okay, I am not interested, but thanks for calling.

Michael Ortega: All right. Bye.

(ECF Nos. 68 at Exhs. 1, 2 and 4 and 81). Plaintiff contends that she heard a prerecorded message apprising her that the call might be recorded when she answered the call before speaking to Mr. Ortega. (Elkins Decl. at ¶ 8). The Court notes that "the parties agreed to defer those issues [whether the call was made using an automated telephone dialing system or prerecorded voice] as part of a compromise to limit Elkins' perceived need for additional discovery and allow the threshold question of consent to be presented to the Court." (ECF No. 68 at 11 n.3). In the April 12, 2013 Order, the

Court withdrew without prejudice as requested by Plaintiff in the Joint Status Report, the motion to compel regarding whether Medco used an "automatic telephone dialing system." (ECF No. 73).

Plaintiff has two telephone numbers, a land line (314-392-9450) and a cell phone (314-922-0901). (Miller Decl., Exh. 3 at ¶ 5). Plaintiff's cell phone is registered on the Do Not Call Registry. (Elkins Decl. at ¶ 10).

## Discussion
### A. Motion for Summary Judgment

1.  Prior Express Consent

In relevant part, the TCPA makes it unlawful for a person: "(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ...." 47 U.S.C. § 227(b)(1)(A). Section 227(b)(1)(A) carves out an exception to its broad prohibition on robocalls to cellular phones for those calls made with the recipient's "prior express consent." Thus, there is no violation of the TCPA if the called party provided his or her express consent to receive auto-dialed or prerecorded message calls on his or her cellular phone. See id. The Federal Communications Commission ("FCC") has clarified what constitutes "express consent" under the TCPA. The FCC has done so pursuant to its authority to create rules and regulations implementing the TCPA. See 47 U.S.C. § 227(b)(2). The FCC has stated the following with regard to the prior express consent defense:

> [P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached.

In re Rules & Regs. Implementing the Telephone Consumer Protection Act of 1991, 7 F.C.C.R. 8752, 8769 ¶ 31 (Oct. 16, 1992). Thus, a telemarketer does not violate the TCPA "by calling a number which was provided as one at which the called party wishes to be reached." Id. In 2008, the FCC clarified its 1992 Order in the debt collection context:

> Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.

In re Rules & Regs. Implementing the Telephone Consumer Protection Act of 1991, 23 F.C.C.R. 559, 564 (Jan. 4, 2008).

The FCC has further explained that consumers who provide a cellular phone number for business communications could reasonably expect to be contacted at that number with calls from that business, absent instructions to the contrary as follows:

> We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt. In the 1992 TCPA Order, the Commission determined that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."

Id. at 23 F.C.C.R. at 564-65.

Calls otherwise in violation of the TCPA are not unlawful if made "for emergency purposes or made with the prior express consent of the called party," 47 U.S.C. § 227(b)(1)(A); however, "express consent" is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 F.C.C.R. 559, 565 ¶ 10 (Jan. 4,

2008) ("[W]e conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent" because the creditor is "in the best position to have records kept in the usual course of business showing such consent."). Although the Eighth Circuit Court of Appeals has not addressed the issue whether the plaintiff or the defendant has the burden of proving prior express consent, one circuit court and many district courts have concluded that consent is an affirmative defense that must be pleaded and proven by the defendant. E.g., Grant v. Capital Mgmt. Servs., L.P., 449 F. App'x 598, 600 n.1 (9th Cir. 2011); Levy v. Receivables Performance Mgmt. LLC, 2013 WL 5310166, at *6 (E.D.N.Y. Sept. 23, 2013); Robbins v. Coca-Cola Co., 2013 WL 2252646, at *2 (S.D.Cal. May 22, 2013); Swope v. Credit Mgmt., LP, 2013 WL 607830, at *2 (E.D. Mo. 2013); Breslow v. Wells Fargo Bank, N.A., 857 F.Supp.2d 1316, 1319 (S.D. Fla. 2012) (stating that "the prior express consent exemption acts as an affirmative defense, and 'the burden will be on the creditor to show it obtained the necessary prior express consent.'"); Connelly v. Hilton Grant Vacations Co., LLC, 2012 WL 2129364, at *3 (S.D. Cal. 2012); Thrasher-Lyon v. CCS Commercial, LLC, 2012 WL 3835089, at *1 (N.D. Ill. 2012); Shupe v JPMorgan Chase Bank of Arizona, 2012 WL 1344820, at *4 (D. Ariz. 2012); Lee v. Credit Mgmt., LP, 846 F.Supp.2d 716, 730 (S.D. Tex. 2012).

The Court finds that Plaintiff's TCPA claim is barred because she gave her express prior consent to be called at the number she provided when she gave that number at the time of enrollment as her number for contact related to her healthcare benefits. When she enrolled in the group health plan through her employer by executing the Enrollment and Change form, Plaintiff identified "314-922-0901" as her home number on the form and certified that the information she provided was true and accurate. In the enrollment form Plaintiff certified that she carefully read and agreed to abide

by the provisions of the Group Health Agreement, Certificate of Coverage and Benefit Riders under which she enrolled. The Certificate of Coverage ("Certificate") states that Coventry may use and share the personal information provided for treatment, payment, and health care operations and may use or share the personal information with "other businesses who work for the Plan ... [t]o tell You about treatment options or health related services." The Certificate also provides that the members have certain rights including the right to ask for restrictions, and apprised the members to read the Coventry Notice of Privacy Practices for more information. It is uncontroverted that Plaintiff agreed in writing that she would abide by the provisions of the Group Health Agreement, Certificate of Coverage, and Benefit Riders, and she never provided notice requesting she should not be contacted at the number she provided with respect to her health benefits, including the Maintenance Drug Program.[1] Plaintiff was called by a pharmacy benefits specialist with her pharmacy benefits manager on behalf of her existing health plan regarding the pharmacy benefits she was receiving on an ongoing basis.

In an analogous case, the court found that the plaintiff gave her prior express consent to receive the defendant's automated call on her cellular telephone, because she provided her cellular number in the course of requesting a fraud alert, and she did not condition the use of her number for fraud alert purposes. Greene v. DirecTV, Inc., 2010 WL 4628734, at * 1-2 (N.D. Ill. Nov. 8, 2010)

---

[1] The undersigned finds Plaintiff's contention that she could not provide consent inasmuch as she never actually reviewed the documents and agreements at the time of her enrollment does not preclude the entry of judgment. See Burcham v. Expedia, Inc., 2009 WL 586513, at *2-*4 (E.D. Mo. 2009) (failure to see or read the terms of agreement will not excuse compliance with its terms so long as customer on notice of contract terms available and thus bound by those terms); Carlisle v. CitiMortgage, Inc., 2008 WL 68845, at *2-*3 (E.D. Mo Jan, 4, 2008) (signing a form stating he had read the agreement carefully and agreed to abide by all rules, policies and procedures is binding as to the agreement's terms).

(declining to address plaintiff's challenge to the FCC's interpretation of "express consent" because "[a] district court must accept the FCC's interpretation of the TCPA as expressed in their regulations and orders" and consequently, such courts have "no jurisdiction to determine the validity of FCC orders."). Like the instant case, plaintiff provided her cell phone number to a credit reporting agency, as part of a fraud alert, specifically for the purpose of having potential creditors contact her. Id. at *1. Thus, the court found that when potential creditors called the plaintiff at that number, as a fraud alert notification, the potential creditors had not violated the TCPA because she had given her express consent through the fraud alert. Id. at * 3. In another case, the court found plaintiff voluntarily provided her cellular number in the process of obtaining a subscription and therefore gave defendant permission to contact at that number absent instructions to the contrary. Steinhoff v. Star Tribune Media Co., LLC, 2014 WL 1207804, at * 3 (D. Minn. Mar. 24, 2014). The Court concludes that the provision of her cell phone number reasonably evidences prior express consent by Plaintiff to be contacted at that number regarding pharmacy benefits.

2.      Established Business Relationship

Section 64.1200(c)(2) provides that it is a violation of the TCPA to call "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." The current rules define the term "established business relationship" ("EBR") as "a relationship ... on the basis of an inquiry, application, purchase or transaction by the [recipient]." 47 C.F.R. §64.1200(f)(5).

This Court has recognized that a potential recipient's existing business relationship with the defendant is an affirmative defense to the TCPA, and the burden of demonstrating that a call was not

unsolicited by way of an existing business relationship or another means, rests with the caller. St. Louis Heart Ctr., Inc. v. Forest Pharm., Inc., 2013 WL 1076540, at *2 n.2, *6 n.6 (E.D. Mo. March 13, 2013). "[A]n EBR may be terminated by the recipient's request to terminate future communications." CE Design Ltd. v. Prism Bus. Media, Inc., 2009 WL 2496568, at * 4, 15 (N.D.Ill. 2009) (citing In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 F.C.C.R. 8752, 8779 n.47 (Oct. 16, 1992)(Explaining that "subscribers may sever any business relationship, i.e., revoke consent to any future solicitations, by requesting that they not receive further calls from a telemarketer, thus subjecting that telemarketer to the requirements of § 64.1200(e).").

Assuming the call was a telephone solicitation, Plaintiff's "Do Not Call" claim fails because her established business relationship with Medco bars liability for the call. 47 C.F.R. 64.1200(f)(12). It is uncontroverted that Plaintiff had an established business relationship with Medco as evidenced by Plaintiff utilizing Medco's prescription benefit management services to fill twelve prescriptions from January 1 to June 1, 2012 at one of Medco's retail-network pharmacies and submitting prescription claims to Medco for thirty-day supplies of maintenance medications. Because the undisputed facts demonstrated that Medco Health Solutions, Inc. is entitled to judgment as a matter of law, the undersigned will grant the motion for summary judgment.

### B. Motion for Additional Time to Conduct Discovery

Under Federal Rule Civil Procedure 56(d), a district court may defer considering a motion for summary judgment if a party opposing the motion "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); Chambers v. Travelers Cos., Inc., 668 F.3d 559, 568 (8th Cir. 2012). Rule 56(d) reflects the principle

that "summary judgment is proper only after the nonmovant has had adequate time for discovery." Ray v. Am. Airlines, Inc., 609 F.3d 917, 923 (8th Cir. 2010)(citation omitted). As such, Rule 56(d) "should be applied with a spirit of liberality." United States ex. rel. Bernard v. Casino Magic Corp., 293 F.3d 419, 426 (8th Cir. 2002) (citation omitted).

Rule 56(d), however, "is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious." Duffy v. Wolle, 123 F.3d 1026, 1040 (8th Cir. 1997); see also Gardner v. Howard, 109 F.3d 427, 431 (8th Cir. 1997) ("Rule 56(f) does not condone a fishing expedition.") A nonmovant seeking relief under Rule 56(d) must do more than speculate that it may discover additional facts that would overcome a motion for summary judgment, see Stanback v. Best Diversified Prods., 180 F.3d 903, 911 (8th Cir. 1999), and must submit an affidavit showing "'what specific facts further discovery might unveil.'" Id. (quoting Dulany v. Carnahan, 132 F.3d 1234, 1238 (8th Cir. 1997)). "Where a party fails to carry [his] burden under Rule [56(d)], 'postponement of a ruling on a motion for summary judgment is unjustified.'" Id.

"To obtain a continuance under [Rule 56(d)], the movant must show good reason for being unable to present facts essential to its response." Elnashar v. Speedway SuperAmerica, LLC, 484 F.3d 1046, 1055 (8th Cir. 2007). Mere speculation that the nonmoving party controls relevant facts is an insufficient basis for a Rule 56(d) continuance. Davis v. G.N. Mortg. Corp., 396 F.3d 869, 885 (7th Cir. 2005). In addition, a plaintiff who has been "dilatory in pursuing discovery" is generally not entitled to a Rule 56(d) continuance. Snyder v. Livingston, 2012 WL 32984, at *2 (N.D. Ind. Jan. 5, 2012); accord Pfingston v. Ronan Eng'g Co., 284 F.3d 999, 1005 (9th Cir. 2002) ("The failure to conduct discovery diligently is grounds for denial of a [Rule 56(d)] motion.").

- 15 -

"As a general rule, summary judgment is proper 'only after the nonmovant has had adequate time for discovery.'" Iverson v. Johnson Gas Appliance Co., 172 F.3d 524, 530 (8th Cir. 1999) (quoting In re TMJ Litig., 113 F.3d 1484, 1490 (8th Cir. 1997)). "Nonmovants may request a continuance under Rule 56(f) until adequate discovery has been completed if they otherwise cannot present facts sufficient to justify their opposition. This option exists to prevent a party from being unfairly thrown out of court by a premature motion for summary judgment." Id. Yet Rule 56(f) "'is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious.'" Humphreys v. Roche Biomedical Labs., Inc., 990 F.2d 1078, 1081 (8th Cir. 1993) (citation omitted). A Rule 56(f) affidavit must "set forth 'specific facts further discovery might uncover,' or what information further discovery might reveal." Anuforo v. Comm'r of Internal Revenue, 614 F.3d 799, 808 (8th Cir. 2010) (citation omitted).

In the instant case, Plaintiff's counsel filed a declaration requesting documents describing the relationship between Medco and Medco Pharmacy, documents explaining the intent and purpose behind the calls, and consumer complaints regarding the challenged calls. (Burke Decl. at ¶¶ 3, 4, and 7). In particular, counsel first contends that Plaintiff has not been provided any discovery regarding the relationship between Defendant Medco Health Solutions, Inc. and Medco Pharmacy. The undersigned agrees that such documentation is not relevant inasmuch as Medco Health Solutions, Inc. is the only named defendant in the instant action, and the party who made the call(s) at issue as her pharmacy benefits manager. Indeed, Plaintiff asserts, without explanation, that "[i]f Medco Pharmacy is not under common ownership with defendant, then 'prior express consent' is even more attenuated...[.]"

Likewise, Plaintiff's request for documents explaining intent and purpose behind the calls is without merit. A review of the record shows Medco has produced a recording and a transcript of the July 5, 2012 call, and the telephone script/call guide(s) used by Michael Ortega during the phone call. Plaintiff seeks additional discovery alleging the purpose of the call may have been "to bring traffic to [www.medco.com](www.medco.com) in order to sell non-prescription items and personal care products." The Court finds that the requested discovery has no bearing on the prior express consent issue raised in the summary judgment motion. Plaintiff's mere speculation to contradict the undisputed facts cannot support a stay under Rule 56(d). See All-American Hose, 2013 WL 64524, at *5 ("A nonmovant seeking relief under Rule 56(d) must do more than speculate that it may discover additional facts that would overcome a motion for summary judgment.").

Last, Plaintiff asserts that "Consumer complaints regarding the calls at issue in this case will bear on Medco's claimed Established Business Relationship defense." The undersigned finds such complaints would not have any bearing on Plaintiff's claims.

Inasmuch as Plaintiff has failed to show what further facts she might be able to uncover if she was given further opportunity for discovery, the undersigned will deny Plaintiff's motion to postpone ruling on the summary judgment motion. The Court finds that Plaintiff has failed to provide specific facts explaining how further discovery will enable her to overcome Medco's motion for summary judgment. Under these circumstances, Plaintiff is not entitled to additional time to complete discovery. Plaintiff has not made the necessary showing for additional discovery and deferral of Medco's motion for summary judgment under Rule 56(d). Plaintiff's reasoning for its Rule 56(d) motion is denied.

**IT IS HEREBY ORDERED** that Defendant Medco Health Solutions, Inc.'s Motion for Summary Judgment (ECF No. 64) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's Fed.R.Civ.P. 56(d) Motion (ECF No. 82) is Denied.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

                                          /s/Terry I. Adelman
                                    UNITED STATES MAGISTRATE JUDGE

Dated this  25th  day of April, 2014.